Good morning, your honors. My name is Bruce Berline. I am appellate counsel for defendant Wei Lin in this matter. May it please the court, first a quick mea culpa. In preparing for oral argument over the last couple of days, I realized that for some reason my excerpt of recognize are about four pages off. My job here is to try and make your job easier, not harder. If you'd like, I can re-file my apologies. Nothing that the government states in its answering brief or puts forward to this court changes the application of the standard applicable to this issue, which is allowing defendant Wei Lin to withdraw his plea. Let me just try to focus you a little bit. You know, we have cases and this Garcia case from 1990 is the one I'm thinking of in particular, but we have cases going way back that basically say, you know, if what you're complaining about is that your lawyer promised you a particular sentence and the judge ended up giving you a higher sentence, that is not a ground, even in the pre-sentencing withdrawal context. That's not a ground for the judge to let you withdraw your plea. So why don't you just zoom in on that and explain why do you think this is different from that kind of case? Right. Okay. So defendant bad advice. Pre-plea with absolutely no indication that he gave the defendant Wei Lin any other advice except for this is a base offense level of 14. Turns out the court thinks that it's 34. I understand. You can't then, we don't allow you to change your plea just because you have a change of heart. We know that. But this is not that. What this is, is a plea entered into on reliance of a gross mischaracterization of sentencing and base offense levels. In a sentence, he assumed when he pled guilty, there would be a penalty. And he assumed that the penalty that his lawyer told him would be the penalty, would be the penalty. When in fact, that's not so. He expected to serve X number of years. Instead, he must serve 34. I think I've forgotten that. Yeah, it was a level 14, which is basically 15 to 21 months, as opposed to a level 34, which is... about 19.5 years. Yes. And what you want us to do is what? I want you to find that he had, that he met the standard under our case law. Especially McIntyre, I'm sorry, McTiernan. And that court addressed your specific point, Your Honor. The desire to avoid a custodial sentence may well be the motivation for the motion to withdraw the plea. But that motivation is not disqualifying if there is otherwise a fair and just reason to withdraw the plea. That's McTiernan at 546. But the Garcia case that I mentioned, and I know this is going back, you know, 20, 30 years now. But in that case, the lawyer told the defendant, you're not going to serve any more than eight years. That was the advice he gave the defendant pre-plea. And the judge ended up giving him 235 months, which I think is the same amount of time your client got. Right? I think in your case, it's the lawyer said three to six, he got 235. In Garcia, the lawyer said no more than eight. He got 235. And in Garcia, we said, no, that is not good enough to allow you to withdraw your plea. And so I just trying to reconcile your argument here with what happened in that Garcia case. Yes. And I apologize. It's starting to meld together all these cases. But I thought was Garcia 200 months and then he got 360 months. No, no. He, the lawyer told him you're going to serve no more than eight years. And he got 235, 235 months, 235 months. So the same, roughly a little bit less than 20 years. So we said that's not a big enough disparity in Garcia to provide a fair and just reason to withdraw. You say, well, I don't know, three, your client's lawyer at the trial court level said three to six and he got 235. And you say that that is a big enough spread. Right. And I think Davis to me is your best case. Yes. I want to ask government counsel about that case, but I'm just having a hard time reconciling those, you know, Garcia and Davis. They, they don't seem to me to be all that compatible. I think, I think in the, in the, the reason for that is this is an extremely fact based inquiry by the court and this court as well to determine was this standard met. And the standard is very liberal, very generous. You just need a fair and just reason to withdraw. His fair and just reason was that he had been misled by counsel. Correct? That's, that's absolutely right, Your Honor. And so that puts you right into the teeth of, of, of Mayweather, which unless you can get around Mayweather, you simply don't have a case. Now, in this case, as I understand it, the, the, the trial judge, and I read the record, I hope I'm remembering correctly, the trial judge said, you may get 34, you may get life. So, and we said in counsel's misled you. When the judge, when you're in front of the judge and the judge says this is what's liable to happen, then those prior things don't matter at all. So how do you distinguish Mayweather? I distinguished Mayweather through Davis, which, which said, and Davis was the case about probation. And the fact that, look, he was told that he was going to get probation. Told by whom? He got eight years. Told by whom? By his attorney. Okay. And, and then at, at court, there was, there was nothing in, in Davis to dissuade him or tell him or give him any kind of hint or... See, that's a different case. That's a different case. Because there is something here. Three times he heard from the judge. Three times he was warned. And he went ahead with the plea. Three times he knew he could get life. And he went ahead with the plea. And we said, Mayweather, no, no, even if you've been misled by the lawyer, the judge has told you what's going to actually happen. And it seems to me that you don't get around Mayweather with your discussion so far. Well, right now, I mean, one of the distinguishing factors is, for some reason, there was a different attorney and, and, and my client doesn't, he always needed an interpreter. So you're going through an audit. This, you might get 31 or 34. And you may get life in... And, and that, and he was advised of the maximum. There's no, there's no doubt about being advised of the maximum. He was advised of the maximum. But that little bit by the judge, you'll get a level 34, had no effect on the defendant. He doesn't know what a level 34 is. We've, we've... Well, wait a minute. He's, he's, you've, you've argued in your brief that he didn't know that he was told he was going to get 14, not 34. He knew what 34 was. He knew what 14 meant because his defense attorney explained to him and said, that is basically three to six years. So he was, he was counseled on, on the time, the timeframe, I'm going to go to jail for three to six years. Well, maybe, maybe you can argue that he didn't make a difference. He didn't know how much 34 and 14 meant, but he certainly knew what life imprisonment meant. Absolutely. And, and he's, he, he knew that, that, that he could be sentenced to the maximum. But, you know, in McIntyre, they, they talked about, I'm sorry. Yeah. They talked about, look, everybody spoke in generalities. That nobody specifically told this person of the motion to suppress. We all spoke in generalities. Nobody sat there and said, you have a right to suppress this, this evidence. And the court found that's enough to meet the very low standard. That's what happened here. We're all speaking in generalities. Does it pose any problem in your argument where this record shows that the judge indicated that he could be sentenced to a higher level? Now, you're saying he didn't know what 34 meant, but that's why you have a lawyer. You ask him, find this out because I don't know what they're talking about. He, don't you have some problems with this record, with the argument you're making? If it had been the same counsel that had been his attorney of record, Mr. Baines, at the change of plea, when the judge said maybe it could be a 34, at that time, I'd have a big problem with that. I'd have a very big problem. You might still have a big problem because, do you think it matters when a person is properly advised who happened to be representing him at the moment? Yes, if it's an attorney who's not familiar with the facts and the case, that's a big problem because he can't sit there and say, stop, wait a second, this is a problem, let's fix this. And that wasn't available to Defendant Wei Lin. There was no interaction or really any indication that Defendant Wei Lin was understanding the colloquy that was going on. He just said, I understand, I understand. In a lot of these cases, the court takes note of the fact that the defendant is engaging in the court and asking competent questions. What do you expect from a Rule 11 when the judge has him in front of him, and he's explaining, and as he goes along, the defendant says, I understand. The judge is supposed to say, he doesn't understand? No. And if he understands, then that's sufficient for the case. I think that's why the standard is so low, pre-sentence. Of course it's low, but Mayweather shows that it isn't that low. If the judge has explained enough and he understands that, which he said he did under oath, then why is there a problem? How do you get around Mayweather? Because Mayweather, if I remember correctly, they didn't believe the defendant. Didn't what? Here, that was afterwards, but during the colloquy, he was careful about getting an affirmative comment that he did understand. I understand, I understand. Yes, and that sunk him vis-a-vis his argument later that said, oh, I didn't understand, and I didn't understand about the motion to So that sunk him. He was being disingenuous. That is not here in this case. This was pre-sentence. The FBI did an investigation. The AUSA was present. They interviewed the, I know I'm well over my time. You are. I can stop there. Why don't you stop there? We'll give you some time for rebuttal. Why don't we hear from the government next? Good morning, Your Honors. Garth Backey. Excuse me. On behalf of the government appellee, I actually do not have much to add to the government's brief. Good, because I have a bunch of questions. Then that's all I will answer. Well, let's start with Davis. Okay. The standard is, I guess, gross mischaracterization, right? You agree with that? Yes. Your position is simply that the spread between three to six versus 19 1⁄2 is just not, it's not gross enough? Is that your position? No. The evidence should have been advised by his attorneys three to six years. There's nothing to dispute that. That's a gross mischaracterization of his likely guideline sentence. But the standard is prior to entering his plea. So he got that bad advice probably at jail in plea negotiations. No, no, no. Stop right there. His lawyer told him, after doing lawyerly type guidelines analysis, that I think this is, you're going to end up with a base offense level of 14, and when we run through all of the additions and subtractions, that spits out a sentence of roughly three to six years. That was the advice that his lawyer gave him. It's not some jailhouse talk. His lawyer told him that, and you're not disputing the truth of what Mr. Lynn said in his affidavit. I don't remember if he testified, right? So you concede that his lawyer did give him that faulty advice. No, I should refute it. So, yes, that is right. Okay, good. So we're on the same page there. Turns out he gets, what was it, I'm just going to say he got 20 years. That's roughly what he got. So your position is simply that the spread between the three to six advice he got from his lawyer and the 20 years he ultimately got, that's just not a big enough spread to meet the Davis gross mischaracterization standard? No, Your Honor, and I apologize if you took offense to the way I characterized the jail conversation, but what I was saying was that that did occur. It was a tame-paying trial, so it occurred in jail. He was then brought to court for the Rule 11 hearing. So the prior to plea, what I'm saying is prior to entering his plea, that's what's important. And prior to entering his plea, he got correct legal advice. No, he didn't. No, he didn't, because the misadvice here, it's very different, for example, from the Mayweather case that my colleague was just talking with you about. There, the misadvice the defendant was complaining about is that his lawyer said, your maximum sentence is going to be 60 months. But at the plea colloquy, the judge told him, no, the minimum is 60 months and the maximum is life. So whatever misunderstanding the defendant had was corrected by the judge on the record. That's not true here, because the misadvice was as to what the guideline sentence would be, not what the judge was ultimately going to impose, but what the guideline sentence was going to be. And all the judge told him is that this might turn out to be a 34, but I think your opponent is right that the 34, that doesn't mean anything to this defendant. Well, Mayweather does talk about, was he given the pre-plea knowledge? And he was, and this defendant was given advisements, both in the plea agreement and at the Rule 11 hearing, that, hey, any advice you got, you cannot rely upon and is not binding upon the court. That was twice in his plea agreement and at the Rule 11 hearing. That happened in Davis as well. So the pre-plea knowledge that he was given was, hey, this sentence that you're putting on, you're allegedly putting all your faith in, that's not a good idea because it's not binding. And most importantly, you are agreeing to the risk of spending the rest of your life in jail. Are you willing to take that risk? Because I can sentence you to life. Do you take that risk? Yes, I do. And now he's complaining. That was true in Davis as well, though. So to me, you're right. I'm not disputing anything that you just said, but that was also true in Davis. But we nonetheless said if the lawyer's advice turns out to be a gross mischaracterization of what the real facts are, that can provide a fair and just reason for withdrawal. It can. It doesn't have to. I mean, Davis is not a reversal case. It's a remand case. So that was about, hey, the district court engaged in the wrong analysis. We're sending it back so it can apply the fair and just standard. So it's not saying that that was a reversal. That is per se fair and just. No, but it's saying that the standard for assessing in this context whether there's a fair and just reason is whether the lawyer grossly mischaracterized the true state of facts. And so it seems to me that's the legal standard that Davis sets. And our task here is to decide whether the spread between 3 to 6 versus 20, does that meet that standard? Because if it does, then the judge here necessarily abused her discretion by not letting him withdraw. I guess I would disagree with that. But, okay, let's say he understood 14. He understood 14 equals 3 to 6. He's then told 34. Under simple math, that's more than twice. So now he should have been a – 14 times 2 is 28. He doesn't know because I don't think he says that I knew what 14 meant in the larger scheme of the guidelines vis-à-vis 34. I think he says all I knew was that the lawyer told me 3 to 6 was what the guidelines was going to provide. And he admits that the lawyer told me, look, that doesn't mean the judge is bound to give you 3 to 6 because she can go above, she can go below that. But in my experience, most of the time the judges stick within that. So that's his mindset is that 3 to 6 is what the guidelines provide. It turns out that, no, actually the guidelines provide 20 as the low end, right? And that just seems to me that's a pretty significant difference. In Davis, the difference was 0 versus 8 years, right? I agree. It is a significant difference. It is definitely a significant difference. Let me put it to you this way because I guess this is what bothers me about the government's position here. What is the good reason why he shouldn't have been allowed to withdraw? Why don't you just say – why don't you even oppose this? Why don't you just say, look, okay, sir, we got the goods on you. If you want to roll the dice and go to trial, go ahead. But why at that point early on in the case, why not just let him withdraw? What's the harm there? Well, I might have to reference things that are part of the record, but I did reference the email we sent to his defense attorney saying please advise him that we are proceeding as if we won at trial. He might be getting life here. He needs to know what he's getting into. So that is one reason that we resisted this. We've done everything in our power to give him proper advice. But then you learn after the plea that the defendant says, and you're not refuting anything he says, that you know what? I was totally misled as to what the relevant sentencing exposure was. Had I known that I was looking at a low end of 20 under the guidelines, that was going to be the starting point for the judge. I would not have pleaded guilty, and you don't have any basis to refute the veracity of what he's saying. So on that state of facts, why is the government not saying fine, bring it on. We'll go to trial. It deals with sex trafficking victims. One of the reasons of entering into the plea, if you look into our brief, we had prior negotiations. This was a long process. We were offering very favorable deals in the beginning to prevent the victims from having to testify. So when he comes in and this deal – Well, that's not so in this case, though, is it? What's that, Your Honor? I'm sorry. That the victims were willing to testify. They were surprised when they found out what the sentence was. And were relieved by the guilty plea for sure. Yeah, but this is a different case from the normal case because the question – one question in this case is whether really it is sex trafficking when he helps known prostitutes come into a city to carry out their trade. Everybody knew that's what they were doing and he knew it. So we got a different situation because the heavy penalty is because somebody against their will is forced into prostitution or sex. That was the case. Isn't that the difference? That was the case here. They were forced into prostitution. He claimed they weren't. And that was where the benefit of the plea agreement he got. He got out from under the mandatory minimum. He could have argued sentencing. Hey, they knew it. And we could say, no, they were forced, and the judge would pick the appropriate sentence. But that was the benefit of the plea agreement that this defendant received. He got out from under the mandatory minimum, which would have applied no matter what would have happened at sentencing. If I may, about Garcia. I mean, first of all, I believe you said that in Garcia the incorrect legal advice the Ninth Circuit then said, sorry, not enough. But my understanding is Garcia is actually a pro-defendant case, and it's a newly discovered evidence case. No, no, no. You're thinking of a different Garcia case then. Okay. Not the one that – I'm thinking of the one that Davis was based on. Davis was based on Garcia. Well, let me see if I can find the site for you. But, yeah, you know what? There's three different Garcia cases I think the party cited. I'm talking about the one at 909F2nd. It's an older case, and it deals specifically with this exact same context. And I think it's actually your best case here, but it's just that it's much older than Davis. I think Mayweather's our best case because it shows the importance of Rule 11, colloquy's statements made by defendants, the non-statements made by defendants. When a defendant sits silent when we're talking about his guidelines and he's putting all this faith into it, the court can consider the fact he stood silent. And in this case, he didn't just stand silent. He said, I understood. Can I just go back to the question I posed to you? Because maybe you probably think it's an unfair question. But I really am genuinely interested in your answer. What is the good reason to not let somebody withdraw their plea when they credibly established that I pleaded guilty under a complete misconception of what was going to happen? Why wouldn't you just say, you know what, if that's what happened and we don't have any basis for refuting that, then sure, you shouldn't spend 20 years in prison without being able to exercise your right to trial if that was what went down. So I'm still interested in your answer to that. Two reasons. In this case, I might have to go a little bit outside the record, but it is referenced that the change of plea hearing, in this case Rule 11, was 90 minutes long. That is quite an incredibly long change of plea hearing. And the reason for that is because we had a chamber conference with the judge on June 1st and we said, Judge, we want to do everything in our power to prevent him from withdrawing later. So we continued it and we moved it one week. And that's when we were sending this email saying, please advise him. Please advise him of these things. We do not want him to try to back out later. And sure enough, what did he do? He tried to back out later. So that's one reason we opposed it. But the reason the change of plea hearing took 90 minutes, the judge gave him the Ninth Circuit model jury instruction. She even gratuitously brought up the base defense level, which was from our discussions. It's hard for me to say. The defense attorney, we talked about it. Nobody is saying the district judge did anything wrong at the plea colloquy. She did a very thorough job. I agree with you. Why did we oppose it? It's because we knew he was going to do this. So you think this was all actually just he's gaming the system. You don't really believe that he was misled by his lawyers. Is that what you're ultimately telling us? I mean, if that's, tell me if that's what, if that is what. It doesn't jive with reality. It doesn't jive with conversations. It doesn't jive with the advisements that the court gave him, my conversations with defense counsel. You know, when we said, when we submitted our objections to the 14 calculation, the defense attorney objected that day, actually within hours, saying the defendant will likely withdraw if this is true. I'm saying it's a virtual impossibility that he went and spoke with his client in enough time to then come back and say that that is the objection of the defendant. That's the objection of the defense attorney, not the defendant. Okay. You're over your time unless my colleagues have questions. I guess I would just, a piece of advice, I mean, obviously every one of these cases is a learning experience, but when you know the gap between your position and the defendant's sentencing position is this great between 14 and 34, you should have stood up at the plea colloquy and said, Your Honor, that's exactly right. 34 is what we are going to argue for, and that translates into a sentencing range of X to X. If you had done that, we wouldn't even be here. I think that's imposing burdens and obligations on me that are not supported by the case law and are problematic. I'm just saying you could have avoided having to stand here and answer these questions. I'm not saying that you necessarily lose the case. I'm not saying that's what the law requires. I'm just saying, as an AUSA, do all of us a favor next time. If you're so worried that this person is going to game the system and try to back out, just state on the record then what the exposure would be. I did, but not on the record. It was at the chamber conference. And the reason the court brought up the 34, because the court asked, Did you guys agree to the applicable base offense level? And they said, No, we were not. That's from the chamber conference where I opened up the sentencing guideline and said, We have a problem here, 34-14. We don't know which one it's going to be. The case law, there's no case ever addressing it. Here's an issue, 34-14. For some reason, though, the evidence shows that that conversation was not relayed to the defendant. But I think it was reasonable for me to assume that it would be, because I brought it up. We then a week later go to the change of plea hearing. That's why we get right into it from me having brought it up. So I did bring it up. It just wasn't on the record. Okay. Thanks for your argument. We'll give counsel for the defendant a minute or two for rebuttal. Thank you. The bottom line is he's not gaming the system. This is a bona fide gross mischaracterization of his attorney's advice to him regarding the pertinent matter of sentencing. The FBI interviewed all the attorneys, the translators. They found nothing, because if they had found something, it would be in the government's answering brief. He's not gaming the system. In rebuttal to that, the government knew well that this was likely a rule offense level 34. There's no evidence that they told Mr. Baines that. Why not put that in the plea? Make it easy. We wouldn't be here, because then we would have gone to trial. In the plea agreement. What result do you expect from this hearing? To vacate the plea and to remand it back to the district court or in the alternative, remand for new sentencing. And they're two very different things, aren't they? Yes, they are, Your Honor. And that's why I'm asking you, what do you expect? A remand for resentencing on this record? Is that the only result from this record? No, I think this court could remand back and allow him to withdraw his plea, and that's probably the proper solution. But in the alternative, go back and find under the rule of lenity, which is a perfect solution. Withdrawing his plea, that's a worry at least a third of the court has. He was advised. He knew everything except he didn't know the difference between 14 and 34. And he entered a plea of guilty. I am guilty, but he didn't know, using your best argument, the difference between 14 and 34. In other words, that he was facing 20 as 19 plus or whatever his lawyer told him. So when we remand, if we would remand, it seems on this record, the best you can ask us to do is remand for resentencing, not for withdrawal. But it seems to me the issue you still haven't answered. You say he didn't understand. But under oath, in front of an Article I judge, district judge, he says he does understand. And we say in Mayweary that when the district judge at the plea colloquy clarifies, then whatever the lawyer said doesn't make any difference. And that's exactly what happened in this case. Now, if they hadn't done that, I understand the argument that there's a big spread and the rest of that. But that was true in Mayweather too. And Mayweather binds us. We're just a plain panel. We have to follow the other panels. And the panel says that when the district judge, under oath, explains the things that were unfortunately misexplained by the lawyer, that that solves it. And even here, there's a step further than Mayweather because the judge goes to make sure he understands, and he says he does understand. Under oath. That's not gaming. That's under oath. So I don't see, in spite of all the other arguments we've had today, I don't see how we can help your client unless we can distinguish Mayweather. I think we're bound to follow Mayweather. So what's your response? And here's how you do that, Your Honor, is Mayweather, the court found that his excuse to withdraw the plea was basically just a change of heart. The issue that he brought forward, that Mayweather brought forward, was not fair and just because it was false. It showed that the judge told him 60 months was, I believe, the minimum. And there was another issue there. I think there was a motion to suppress issue as well, and in his affidavit, it showed that he actually had a discussion with his attorney about that. Of course. That's what Mayweather's about. Mayweather says no matter what the lawyer tells you, when the judge tells you what's the real fact, then that ends it, and you don't get the benefit of what happened before and what your lawyer told you, which takes away all of the issues we've been talking about if we follow Mayweather. But I disagree with that. I'm not sure you disagree with it, but why do you disagree that Mayweather doesn't control? Because that was proven to be false. His reason was not fair. He cannot meet that. That is the way Mayweather said it. You can't get any language out of Mayweather that will draw you back. What language in Mayweather gives you that option? What language in Mayweather? Because he didn't meet the standards. Once the judge explains what the real sentence is, and Mayweather says regardless of what lawyers say before, at that time, that trumps. I'm faltering on the site here, but it's either in Davis or in Mayweather itself where the Ninth Circuit says even a perfect Rule 11 colloquy does not shield it from attack to a motion to withdraw. You ought to cite that in your brief if that exists. That's certainly completely inconsistent with Mayweather. Yes. Okay. It's out there, and I have it as, while we recognize that even a perfect Rule 11 colloquy does not preclude a later plea withdrawal, it is hardly a mere formality. I'm going to cut you off. Thank you very much for your argument. The case just argued will stand submitted.
judges: Wallace, Farris, Watford